**In re Paul Dana CARTER, Janet Arlene Carter, Debtors.**

**Bankruptcy No. 89-20574-13.**

United States Bankruptcy Court, D. Kansas.

Feb. 28, 1991.

Jan Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., for debtors.

Charles S. Kennedy, III, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

William H. Griffin, Topeka, Kan., Trustee.

## MEMORANDUM GRANTING MOTION FOR SUMMARY JUDGMENT AND DETERMINING TAX LIABILITY

JAMES A. PUSATERI, Bankruptcy Judge.

This matter comes before the Court on the debtors' motion for determination of tax liability and on the United States' motion for summary judgment. Paul and Janet Carter ("Debtors") are represented by Jan Hamilton. The United States ("U.S.") is represented by Charles S. Kennedy, III, Tax Division, U.S. Department of Justice.

## FINDINGS OF FACT

The U.S. has filed a Proof of Claim in the amount of $14,065.64 which consists of a priority claim of $12,770.57 and a general unsecured claim of $1,295.07. The Debtors are entitled to credits of $976.00, with respect to the 1986 income tax return of Janet Carter, and $1,350.00, with respect to their 1987 joint income tax return, and the U.S. is willing to offset these credits against its claim. The U.S. is seeking summary judgment to determine that the value of its general unsecured claim is $0.00 and that the value of its priority claim is $11,739.64. The Debtors, however, contend that the U.S. should have a priority claim of $1,916.89[1] and a general unsecured claim of $1,295.07.

The parties agree that the Debtors owe $3,522.28 as civil penalties under 26 U.S.C. § 6672[2] with regard to the unpaid employment taxes of J. Watsons 21, Inc. ("J. Watsons") for the first and second quarters of 1985. The Debtors dispute the contention of the U.S. that they also owe pre-petition interest of $76.76 on that amount.

The parties agree that the Debtors owe $2,341.14 as civil penalties under 26 U.S.C. § 6672 with regard to the unpaid employment taxes of Midwest Operating Co., Inc. ("Midwest") for the second, third, and fourth quarters of 1987. The Debtors dispute the contention of the U.S. that they also owe pre-petition interest of $25.92 on that amount.

The parties agree that the Debtors owe $2,201.16 as civil penalties under 26 U.S.C. § 6672 with regard to the unpaid employment taxes of Platos, Inc. ("Platos") for the fourth quarter of 1986. The Debtors dispute the contention of the U.S. that they owe pre-petition interest of $36.37 on that amount. The Debtors also dispute the contention of the U.S. that they owe $552.91 as civil penalties for the third quarter of 1985, and instead contend that they are entitled to a credit of $3,551.72 for that period. The parties agree that the Debtors paid

---

1. The debtors actually contend they owe $1,516.89 by their own statement of contentions of the parties on the priority liability, but this figure was reached after a couple of mathematical errors. The debtors paid $6,731.34, not $6,731.36 as they contend, which if applied to the withholding liability of $3,179.62 would result in a credit of $3,551.72. The priority liability according to their figures should be $8,526.89, not $8,126.93 as they contend, which results in an amount owed of $1,916.89.

2. 26 U.S.C. § 6672 provides for a penalty assessable against corporate employees who, although responsible for withholding and paying over employment taxes to the United States, fail to ensure that the employer complies with these laws. Because the penalty is equal to the total amount of the income and social security tax withheld from employee checks but not paid over to the Government, it is called a "100% penalty". Although it is termed a "penalty", the liability is civil in nature. *Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977). It is separate and distinct from the liability imposed upon the employer. *Id.,* 565 F.2d at 1047. Liability under § 6672 is not dischargeable in bankruptcy. *Matter of Severance,* 593 F.2d 4 (5th Cir.1979).

$6,731.34 toward the liability for the third quarter of 1985, but they disagree on how it should have been applied. From documentation provided by the I.R.S., the withholding tax liability for Platos for the third quarter of 1985 was $5,033.12 (employer's portion of FICA of $1,853.50, employee's portion of FICA of $1,607.32, and employee's income tax withheld of $1,572.30), plus statutory additions of $2,251.13. The I.R.S. chose to apply the $6,731.34 payment first toward the non-trust portion (employer's portion of FICA and statutory additions), then toward the trust portion (employee's portion of FICA and employee's income tax withheld). The $552.91 the U.S. contends the Debtors owe as civil penalties for the third quarter of 1985 is equal to the employee's income tax withheld still owed for that period. The Debtors contend that the $6,731.34 payment should have been applied solely to the trust portion of $3,179.62, resulting in a credit of $3,551.72.

The parties agree that the Debtors owe $356.00, with pre-petition interest of $80.68, in federal income tax for 1986 and $3,575.00, with pre-petition interest of $2.35, in federal income tax for 1988 and that penalties on these liabilities amount to $1,295.07, which is an unsecured claim. The U.S. contends that the credits of $976.00, with respect to the 1986 income tax return of Janet Carter, and $1,350.00, with respect to the Debtors' 1987 joint income tax return, should be offset against the unsecured claim first, then against the priority claim, while the Debtors contend that the credits should be offset against the priority claim.

The Debtors claim the following refunds from their 1981–1984 individual tax liability due to loss carrybacks: $3,997.00 for 1981, $9.00 for 1982, $216.00 for 1983, and $62.00 for 1984. They contend that the refunds should be allowed to offset the I.R.S.'s claims. The U.S. contends that the Debtors are barred from claiming the refunds because the loss carrybacks were not claimed within the applicable time period.

## CONCLUSIONS OF LAW

The issues presented for determination are whether pre-petition interest accrues on the civil penalties owed by the Debtors under 26 U.S.C. § 6672 with regard to the unpaid employment taxes of J. Watsons, Midwest, and Platos; whether the U.S. can apply a voluntary undesignated payment in its discretion or whether it should have been applied to the trust portion; whether the U.S. may allocate setoff of the Debtors' income tax refunds in its discretion or only against the priority claim; and whether the statute of limitations bars recovery of the refunds arising from the 1984 and 1985 net loss carrybacks to offset the I.R.S.'s claims, and if so, whether equitable recoupment is appropriate.

■ Pre-petition interest accrues on the civil penalties owed by the Debtors under 26 U.S.C. § 6672 with regard to the unpaid employment taxes of J. Watsons, Midwest, and Platos. The Internal Revenue Code provides that if any amount of tax imposed is not paid by the last date prescribed for payment, interest on that amount accrues at the underpayment rate until the tax is paid. 26 U.S.C. § 6601(a). Furthermore, interest is assessed, collected, and paid in the same manner as taxes, and any reference in the Internal Revenue Code to any tax imposed also refers to any interest imposed on that tax. 26 U.S.C. § 6601(e)(1). The 100% penalty imposed under 26 U.S.C. § 6672 is assessed and collected in the same manner as taxes, and except as otherwise provided, any reference in the Internal Revenue Code to any tax imposed also refers to the 100% penalty. 26 U.S.C. § 6671(a). Finally, this Court has held that priority claims under 11 U.S.C. § 507(a)(6) include any interest that accrued on the claim before the bankruptcy petition was filed. To the extent the underlying tax claim is allowed, interest that was matured as of the date the bankruptcy petition was filed is a proper part of the claim. *In re Coleman American Companies, Inc.*, 26 B.R. 825, 831 (Bankr.D.Kan.1983). Therefore, pre-petition interest on the 100% penalty assessment is allowed as a claim against the estate.

■ The I.R.S. may, absent a specific request by the taxpayer to allocate the funds. in a particular way, allocate the funds to the corporation's unpaid tax liabilities in whatever way it feels appropriate. *Gray v. U.S.*, 586 F.Supp. 1127, 1132 (D.Kan.1984). *See, e.g., Liddon v. U.S.*, 448 F.2d 509 (5th Cir.1971), *cert. denied* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). Thus, the U.S. can apply a voluntary undesignated payment in its discretion; it did not need to be applied against the trust portion only.

■ The Debtors cannot dictate that the $2,326.00 in credits from their 1986 and 1987 income tax returns be setoff against the priority claims of the U.S. The priorities given by 11 U.S.C. § 507 are expressions of Congressional policy that certain claims against a debtor should be given priority in payment above others, and to preserve that priority payment scheme, the debtor's claims should be setoff first against the non-priority claims. *In re Braniff Airways, Inc.*, 42 B.R. 443, 452 (Bankr.N.D.Tex.1984). "It would completely defeat this statutory scheme if a debtor were allowed to setoff its claims against the creditor, *first* against the creditors [sic] priority claims and *secondly* against the creditors [sic] general non-priority claims." *Id.* (original emphasis). The Supreme Court's recent holding that a bankruptcy court has the authority to order the I.R.S. to apply a Chapter 11 debtor's tax payments under a reorganization plan to withholding-tax debts where the designation is necessary to the success of the debtor's reorganization plan does not affect this result. *U.S. v. Energy Resources*, 495 U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Thus, the U.S. may allocate setoff of the Debtors' income tax refunds in its discretion, not only against the priority claim and including to the satisfaction of the unsecured debt.

The Debtors claim that they are entitled to refunds for the 1981 through 1984 taxable years from carrybacks of net operating losses arising in 1984 and 1985. A net operating loss for any taxable year can be carried back to each of the three taxable years preceding the taxable year of the loss. 26 U.S.C. § 172(b)(1). Therefore, the 1981 refund could only be recovered from the carryback of the 1984 net operating loss. Returns made on the basis of a calendar year must be filed on or before April 15th of the following year, and the statute of limitations for claiming a refund of loss carrybacks is three years from the due date of the return for the year in which the loss carrybacks arose. 26 U.S.C. §§ 6072(a), 6511(d)(2)(A). Thus, the 1984 tax return was due April 15, 1985, and any claims for loss-carryback refunds must have been made by April 15, 1988. Because no claim was filed by that date, collection of the 1981 refund is barred by statute of limitations.

The 1982, 1983, and 1984 refunds, totalling $287.00, possibly could be recovered from the carryback of the 1985 net operating loss. Although the 1985 tax return was due April 15, 1986, the refund claim was due April 17, 1989. April 15, 1989, was a Saturday, and when the last day prescribed under the Code for performing *any* act falls on Saturday, Sunday, or a legal holiday, performance is considered timely on the next succeeding day which is not a Saturday, Sunday, or a legal holiday. 26 U.S.C. § 7503 (emphasis added).

Coincidentally, April 17, 1989, was the day the Debtors filed for bankruptcy under Chapter 13. They contend that the statute of limitations for filing a claim for refund is tolled by 11 U.S.C. § 108(a)(2) which provides that if the statute of limitations for the debtor to commence an action under applicable nonbankruptcy law has not expired before the petition is filed, the trustee has two years, or until the end of the statutory period if later, to commence the action. They further contend that they have the right to assume that power of the trustee pursuant to 11 U.S.C. § 1303. That section, however, does not explicitly grant the Chapter 13 debtor the general powers of the trustee, but only the same powers as a trustee under certain subsections of 11 U.S.C. § 363 relating to the sale, use, or lease of property. Furthermore, the three cases they cite in support all involve the powers of the debtor under 11 U.S.C.

§§ 522(g) and (h) to bring action to exercise an avoiding power if trustee does not. *See In re Donato,* 17 B.R. 708 (Bankr.E.D.Va. 1982); *In re Coleman,* 21 B.R. 832 (Bankr. S.D.Tex.1982); *In re Ottaviano,* 68 B.R. 238 (Bankr.D.Conn.1986). Thus, it is questionable whether the Debtors would have the power of the trustee to commence an action.

■ That issue is, of course, moot if 11 U.S.C. § 108(a)(2) does not toll the statute of limitations for filing a claim for refund. 11 U.S.C. § 108(a)(2) extends the time to "commence an action". Loss carrybacks can only be recovered through a refund suit, but no suit for the recovery of any internal revenue tax can be maintained until a claim for refund or credit has been filed. 26 U.S.C. § 7422(a). Then no suit can be begun until six months after the claim was filed unless the Secretary renders a decision within that time. 26 U.S.C. § 6532(a). Therefore, until a claim for refund has been filed and the statutory waiting period has passed, an action cannot be commenced against the U.S. The filing of the claim for refund is a condition precedent to maintaining a suit. *Bryan v. U.S.,* 99 F.2d 549, 552 (10th Cir.1938), *cert. denied* 305 U.S. 661, 59 S.Ct. 364, 83 L.Ed. 429 (1939). Accordingly, filing a claim for refund is not a commencement of an action and is not tolled by 11 U.S.C. § 108(a)(2). The same result was found in the pre-Code case of *Lynch v. Rogan,* 50 F.Supp. 356, 43–2 USTC ¶ 9516 (S.D.Cal.1943), which interpreted former 11 U.S.C. § 29 of the Bankruptcy Act, the predecessor of current 11 U.S.C. § 108(a)(2), which extended the period in which the trustee could institute proceedings on a claim against which the statute of limitations had not expired to two years from the date of bankrupt adjudication. The court held that the filing by the bankruptcy trustee of a claim for refund of income taxes paid by the bankrupt did not constitute the "institution of a proceeding" within the meaning of the provision because it contemplates legal proceedings rather than the filing of a claim.

11 U.S.C. § 108(b) provides that if the statute of limitations for the debtor to file a claim under applicable nonbankruptcy law has not expired before the petition is filed, the trustee has sixty days, or until the end of the statutory period if later, to file the claim. It therefore appears that the trustee (or perhaps the Debtors) could have taken action to preserve the Debtors' rights by filing a claim for refund within 60 days of filing the petition. No claim for refund was filed within sixty days of the petition, and in fact the motion for determination of tax liability was not filed until August 24, 1989, more than four months after the petition was filed.

■ Alternatively, the Debtors contend that 11 U.S.C. §§ 505 and 553 allow the bankruptcy court to setoff these credits against their tax liability. 11 U.S.C. § 505(a)(1) provides that the court may determine the amount or legality of any tax, any fine or penalty relating to tax, or any addition to tax, and 11 U.S.C. § 553 allows the setoff of pre-petition mutual debts between the debtor and the creditor. Section 553 has been applied to taxes. *Rochelle v. U.S.,* 521 F.2d 844 (5th Cir.1975) (unpaid federal taxes of partnership subject to setoff against refund due bankrupt partner individually). Furthermore, the Debtors argue, the Court's equitable powers allow it to provide for setoff or recoupment. The bankruptcy court is a court of equity, and may, in proper circumstances, use its powers to promote the debtor's rehabilitative process. *In re A.H. Robins Co.,* 828 F.2d 1023 (4th Cir.1987). This power extends to proceedings involving the Internal Revenue Code. *See Re J.K. Printing Services, Inc.,* 49 B.R. 798 (Bankr.W.D.Va.1985); *Re Charter Co.,* 86 B.R. 280 (Bankr.M.D.Fla. 1988). Therefore, the Debtors reason the court may invoke setoff or equitable recoupment to overpayments against taxes owed. *U.S. v. Bowcut,* 287 F.2d 654 (9th Cir.1961); *U.S. v. Herring,* 240 F.2d 225 (4th Cir.1957).

■ The judicial doctrine of equitable recoupment permits the government to settle refund claims for overpayment of taxes in a manner other than provided by the applicable statutes. *Girard Trust Bank v. U.S.,* 602 F.2d 938, 221 Ct.Cl. 134 (1979).

Case law, however, limits application of the doctrine of equitable recoupment to situations where both the claim and the recoupment arise out of a single taxable event. *Kojes v. U.S.,* 241 F.Supp. 762 (D.N.Y. 1965). For example, in the *Bowcut* case cited above by the Debtors, the husband died and the wife paid the correct estate tax. The I.R.S. assessed the couple with a deficiency for income tax for the years the husband was still alive. The wife paid the deficiency out of the estate and filed for a refund for the corresponding reduction in estate tax which was disallowed because the three year statute of limitations for claiming estate tax refunds had lapsed. She then filed a timely claim for recoupment against the income tax deficiency which was allowed. The court relied on the Supreme Court's decision in *Bull v. U.S.,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935):

> If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the Government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

*Bull,* 295 U.S. at 262, 55 S.Ct. at 700. The *Bowcut* court allowed recoupment by characterizing the situation as a taxpayer seeking to recover an overassessment of estate tax by recoupment from the very fund which, taken from the estate, had brought about the overassessment. *Herring,* also cited above by the Debtors, was another case in which the estate was entitled to recoup an overpayment of estate taxes against income taxes paid, in view of the fact that the claim for refund of income taxes in the amount of the estate tax overpayment had been timely filed. This was true, even though the period to claim an estate tax refund had lapsed.

In the instant case, there is not a similar circular pattern of payments and overpayments. Because the statute of limitations bars recovery of the refunds arising from the 1984 and 1985 net loss carrybacks and because equitable recoupment is not appropriate, the refunds from the 1981 through 1984 taxable years may not be used to offset the I.R.S.'s claims.

Because pre-petition interest accrues on the civil penalties owed by the Debtors under 26 U.S.C. § 6672 with regard to unpaid employment taxes, because the U.S. can apply a voluntary undesignated payment in its discretion, because the U.S. may allocate setoff of the Debtors' income tax refunds in its discretion, including to the satisfaction of the unsecured debt, and because the statute of limitations bars recovery of the refunds arising from the 1984 and 1985 net loss carrybacks and equitable recoupment is not appropriate, it is determined that the U.S. has a general unsecured claim of $0.00 and a priority claim of $11,739.64.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.