United States Court of Appeals,

Fifth Circuit.

No. 95-10582.

TLI, INC., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nov. 29, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, EMILIO M. GARZA and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

TLI, Inc. filed this federal income tax refund action contending that its claims were not barred by the statute of limitations because it had satisfied the requirements of the "mitigation" provisions, §§ 1311 and 1314 of the Internal Revenue Code, for lifting the bar of the statute of limitations respecting its otherwise untimely administrative claims for refunds for 1983 and 1984, and that in any event, § 108(a)(2) of the Bankruptcy Code extended its time for filing its claim for refund for the 1984 tax year. The parties filed motions for summary judgment. The district court granted the United States' motion, holding that TLI failed to satisfy all the requirements of the mitigation provisions and that § 108(a)(2) of the Bankruptcy Code does not extend the time for filing claims for refund. TLI appealed. Having reviewed

1

the district court's grant of summary judgment *de novo*,[1] we now affirm.

## Facts and Procedural History

TLI, Inc., prior to changing its name in 1987, was known as Trailways Lines, Inc. During the taxable years in question, TLI was a component member of an affiliated group of corporations that had properly elected to file consolidated federal income tax returns (the "Trailways Group"). The Trailways Group filed for Chapter 11 bankruptcy protection on February 12, 1988. Pursuant to the confirmed Plan of Reorganization, the parent and subsidiary corporations of the Trailways Group were merged into TLI. As the successor to the other members of the Trailways Group, TLI is the sole owner of the taxpayer claims asserted by the Trailways Group.

During 1976, 1977, 1978, and 1979, the Trailways Group acquired and placed in service tangible personal property ("Section 38" property) which qualified it for a significant number of Investment Tax Credits ("ITCs"). The ITCs claimed in 1976, 1977 and 1978 were fully utilized to reduce the Trailways Group's tax burden for such years; however, the Trailways Group had no taxable income for 1979. Therefore, the ITCs claimed in that year were carried back to reduce its income tax liabilities for 1977 and 1978. What was left of the 1979 ITCs were carried forward to 1980

---

[1]*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991) (citation omitted).

and subsequent taxable years.

The Trailways Group, in 1983, 1984, 1985, and 1986, disposed of items of the Section 38 property before the end of their estimated useful life.  Section 47(a)(1) of the Internal Revenue Code provides that upon a disposition of Section 38 property

> before the close of the useful life which was taken into account in computing the credit ... the tax ... for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed ... for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time the property was placed in service ... and ending with the time the property ceased to be section 38 property.

26 U.S.C. § 47(a)(1).  Revenue Ruling 72-221 explains that "[s]ection 47(a) ... is designed to place the taxpayer in the same position at the close of the recapture year as he would have been in had he claimed the actual life of the "section 38 property' " that was disposed of prematurely.  Rev.Rul. 72-221, 1972-3 C.B. 15. In order to reach this result, the true life of the property "must be substituted in place of the useful life claimed initially, and the tax liabilities of all prior years affected by the substitution must be recomputed." *Id.*  In situations similar to that of the Trailways Group, the Ruling provides that the unused investment credit earned in a later year must be treated as an increase in the credits allowed under § 38 for prior taxable years and this increase must be taken into account in computing the aggregate decrease in credits under 47(a);  and that § 47(c) does not

3

preclude the carryback of the unused investment credit for a later year in recomputing the tax liabilities for all prior taxable years to determine the amount of recapture tax liability under section 47(a). Consequently, the Trailways Group should have avoided paying recapture taxes in 1983 through 1986 by carrying back its unused 1979 ITCs in recomputing the tax liabilities for all prior taxable years. But the Trailways Group failed to compute its taxes properly and, as a result, in 1983 through 1986, erroneously paid recapture taxes it did not owe and claimed investment credit carryforwards to which it was not entitled.

After the Trailways Group filed for Chapter 11 bankruptcy protection on February 12, 1988, its insolvency accountants discovered the erroneous computations resulting in the payment of recapture taxes and improper ITC carryovers. To correct these errors, the taxpayer filed amended returns on July 28, 1988, for the calendar years 1983 through 1986. The amended returns sought to reduce the taxpayer's ITC carryforward to the proper amount and to obtain a refund of the recapture taxes paid in error. The taxpayer attached a statement explaining that because the requested refunds related, in part, to a return filed more than three years ago, the amended returns were being filed under the mitigation provisions of §§ 1311 through 1314 of the Internal Revenue Code as well as § 505(b) of the Bankruptcy Code.

On August 29, 1989, the Internal Revenue Service ("IRS") determined that the Trailways Group would be allowed its claims for

a refund for the year 1985 and for a reduction of its ITC carryover for the year 1986, concluding that "Revenue Ruling 72-221 does apply in calculating the ITC recapture and the carryovers for 1985 and 1986."  The Trailways Group did not exercise its appeal rights with the IRS or contest in court the findings in the report.

On October 4, 1989, the IRS examiner reported that the Trailways Group's claims requesting refunds for 1983 and 1984 would be denied because the claims were not timely filed and the mitigation statutes did not apply to them.  The examiner's explanation, in pertinent part, provided:

> The taxpayer in this case is relying on Section 1312(4) which allows an adjustment if a determination disallows a deduction or credit which should have been, but was not, allowed to the taxpayer for another year or to a related taxpayer (for any year).  An inconsistent position is not required, but at the time the taxpayer first maintained, in writing, the claim for deduction or credit that was disallowed by the determination, the proper deduction or credit cannot be barred.

On December 11, 1989, the IRS determined that the Trailways Group's claims for the 1983 and 1984 tax years would be disallowed, concluding that for each year "[t]he claim has been denied as it was not timely filed and the mitigation statutes do not apply."

TLI filed an action in the district court on September 6, 1991, for the recovery of federal income taxes erroneously assessed and collected.  TLI moved for summary judgment on the grounds that: (1) § 108(a)(2) of the Bankruptcy Code extended its time for filing its claim for refund for the 1984 tax year;  and, (2) it had satisfied the requirements of the mitigation provisions for lifting

5

the bar of the statute of limitations respecting its otherwise untimely administrative claims for refunds for 1983 and 1984 tax years. The United States filed a response and a cross motion for summary judgment. The district court denied TLI's motion and granted the United States' cross motion for summary judgment. In its opinion, the district court concluded that (1) § 108 of the Bankruptcy Code did not afford the taxpayer an extension of time in which it could file a timely claim for refund of the overpayment of 1984 recapture taxes; and, (2) the mitigation provisions of the Tax Code, §§ 1311 through 1314, may not be applied to allow the taxpayer to lift the bar of the statute of limitations and obtain refunds of overpaid 1983 and 1984 recapture taxes.

## Discussion

### 1.

Pursuant to § 108(a) of the Bankruptcy Code, a party may extend a limitations period for two years following a bankruptcy order for relief. It applies "[i]f applicable nonbankruptcy law ... fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of the filing of the petition [of bankruptcy]." 11 U.S.C. § 108(a) (emphasis added). In this case, TLI filed for bankruptcy before the expiration of the three-year limitations period for filing a tax refund claim, set forth in 26 U.S.C. § 6511(a), for the 1984 refund. The district court decided, however, that § 108(a) of the

6

Bankruptcy Code tolls the statute of limitations, not for bringing an administrative tax refund claim, but only for the bringing of a suit in court. Since TLI brought suit more than two years after the petition for bankruptcy, its claim rests on the application of § 108(a)'s "commence[ment of] an action" to administrative refund claims.

TLI argues that § 108(a)'s "commence[ment of] an action" includes the filing of an administrative claim prerequisite to litigation. A taxpayer must file a claim for refund with the IRS before bringing suit in court. *Brown v. United States,* 890 F.2d 1329, 1346 (5th Cir.1989) (*citing* 26 U.S.C. § 7422(a); Treas.Reg. § 301.6402-2(b)(1)). Therefore, TLI argues, the administrative application for refund is the true commencement of the "action."

The few courts to have addressed this issue have held that § 108(a) does not apply to administrative tax refund claims. *In re Carter,* 125 B.R. 832, 836 (D.Kan.1991); *In re Howard Industries, Inc.,* 170 B.R. 358, 361-62 (S.D.Ohio 1994). *See also Lynch v. Rogan,* 50 F.Supp. 356, 357-58 (S.D.Cal.1943) (interpreting the predecessor to § 108(a), the former 11 U.S.C. § 29, which tolls the statute of limitations for "institut[ing] proceedings"). *In re Carter,* cited by *In re Howard Industries,* held that the filing of an administrative refund claim does not constitute the commencement

7

of "an action" under § 108(a).[2] The Bankruptcy Court reasoned that a taxpayer must file an administrative refund claim and wait for a ruling or for the statutory waiting period to expire before it may "commence an action" by filing suit in district court. *Carter,* 125 B.R. at 836. "Action" refers to the actual tax litigation, a legal contest by judicial process.

We agree. While an administrative refund application must precede a tax action, it does not commence it. Statutory construction begins with the ordinary meaning of the text. *Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed. 753, 761 (1984); *Amarillo Prod. Credit Assoc. v. Farm Credit Admin.,* 887 F.2d 507, 510 (5th Cir.1989) (citation omitted). An "action" in its "usual legal sense means a lawsuit brought in a court; a formal complaint brought within the jurisdiction of a court of law." Black's Law

---

[2]*Carter,* 125 B.R. at 836. The court held instead that refund claims come under § 108(b), which grants a 60-day extension for the "period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any similar act." 11 U.S.C. § 108(b). The application of § 108(b) does not affect TLI's 1984 amended refund request, submitted more than sixty days after filing for bankruptcy. TLI argues that § 108(b) does not apply to its refund claim because § 108(b) lists categories of procedures, "pleadings, demands, notice," required after the start of litigation, but a tax refund claim precedes litigation. While we need not decide the issue of the applicability of § 108(b) to tax refund claims here, we note that TLI's argument ignores § 108(b)'s reference to "proof of claim or loss," a precursor to litigation. Thus § 108(b) may very well apply to an administrative tax refund claim due prior to any potential litigation.

Dictionary 28 (6th ed. 1990). Rule 3 of the Federal Rules of Civil Procedure, titled "Commencement of Action," defines it thus: "A civil action is commenced by filing a complaint with the court." We agree with the other courts that have addressed the issue that the language of § 108(a) does not serve to extend the statute of limitations for filing an administrative tax refund claim.

2.

Ordinarily, the statute of limitations acts as a complete bar to both taxpayers and the IRS seeking to correct past errors. Years closed off through a closing agreement or the doctrine of res judicata are similarly beyond the reach of efforts to recalculate tax liability. However, in narrowly defined circumstances, the strictures established by the statutes of repose are loosened by the Tax Code's mitigation provisions. 26 U.S.C. §§ 1311-1314.

These sections, designed mainly to deal with inconsistencies by the taxpayer, a related person, or the IRS, were expanded by Congress in 1953 to allow redress of additional "tax inequities" in spite of the statute of limitations or similar barrier. The legislation, found in §§ 1312(3)(B) and 1312(4), is applicable when the taxpayer or the IRS, while the proper taxable year remains open, chooses the wrong year to include an item in gross income or takes a deduction or credit and discovers the mistake after the period for correction has ended. *See generally* Irving Bell, *Recent Developments Amid the Mysteries of Mitigation,* 17 U.C.L.A.L.Rev.

542 (1969-70); Boris I. Bittker & Lawrence Lokken, Federal

Taxation of Income, Estates and Gifts § 113.9 (2d ed. 1992);

Mertens Law of Fed. Income Tax, Comm. § 1311-12.

Sections 1311 and 1312, in pertinent parts, provide:

If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law ... then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

26 U.S.C. § 1311(a);

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

(4) **Double disallowance of a deduction or credit.** The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer.

26 U.S.C. § 1312;

In the case of a determination described in section 1312(4) (relating to disallowance of certain deductions and credits), adjustment shall be made under this part only if credit or refund of the overpayment attributable to the deduction or credit described in such section which should have been allowed to the taxpayer or related taxpayer was not barred, by any law or rule of law, at the time the taxpayer first maintained before the Secretary or before the Tax Court, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates.

26 U.S.C. § 1311(b)(2)(B).

Thus, § 1312(4) permits a refund claim which is otherwise

barred if (1) the determination disallows a deduction or credit

that should have been—but was not—allowed the taxpayer for another

10

taxable year or to a related taxpayer; and, (2) the resulting credit or refund was not barred at the time the taxpayer first maintained in writing before the IRS or the Tax Court that he was entitled to the deduction or credit for the taxable year to which the determination relates. *See Longiotti v. United States,* 819 F.2d 65, 68 (4th Cir.1987). The government argues that the taxpayer has failed to demonstrate that either of these mitigation elements is present. We need not reach both issues, because we agree that TLI failed to establish that there was a "double disallowance"—i.e. a determination disallowing a deduction or credit that should have been—but was not—allowed the taxpayer for another taxable year.

TLI contends that the IRS's determination allowing TLI's claims for 1985 and 1986 also constituted a "determination" that resulted in a "double disallowance" of the taxpayer's 1979 ITCs for use in its 1983 and 1984 tax years. This argument simply begs the question; it bases its conclusion on assumptions that are as much in need of proof or demonstration as the conclusion itself, viz., that the taxpayer asked for and was disallowed 1983 and 1984 credits or deductions in connection with its amended 1985 and 1986 returns. The record does not support these suppositions.

Section 1312(4) applies in the select circumstances in which the taxpayer, while the correct taxable year is still open, picks the wrong year to take a deduction or credit and finds, when

11

disallowance for the wrong year is determined, that the correct year is no longer open. 4 Bittker & Lokken, *supra,* § 113.9.3. For example, if a taxpayer files a claim for a refund in 1990, asserting that she neglected to include a charitable contribution for that year, and the claim is refused by the IRS and the courts on the basis that the contribution was actually paid in 1989, a refund claim should be allowed for 1989. Provided that the claim would have been timely had it been filed when the unsuccessful 1990 claim was filed, the statutes of limitation would not prevent recovery. *Id. citing JBN Tel. Co. v. U.S.,* 638 F.2d 227 (10th Cir.1981) (applying § 1312(4) to a taxpayer who deducted a loss on his 1972 return, but the court, after the limitations period had expired for 1971, found that the proper year was 1971).

TLI's double disallowance claim does not clear even the first hurdle of the mitigation provisions. TLI bases its case upon the IRS's determination to grant the taxpayer refunds for its 1985 and 1986 tax years. That determination did not disallow the taxpayer a deduction or credit, much less constitute a disallowance of a deduction or credit which should have been allowed to the taxpayer in another year. That determination involved only the 1985 and 1986 tax years; it did not address substantively the taxpayer's entitlement to deductions or credits in any other year. Of course, the Trailways Group's claims asserted in its amended 1983, 1984, 1985, and 1986 returns were interrelated in that they sought to

12

have its tax liability for each year recomputed according to the interpretation of the Code set forth in Revenue Ruling 72-221. This relationship alone, however, is not sufficient to cause the IRS's determinations regarding the 1985 and 1986 tax years to meet the requirements of a double disallowance under § 1312(4).

The judgment of the district court is AFFIRMED.

13