# United States Court of Appeals for the Federal Circuit

———————————

**WILTON R. STEPHENS, JR., CAROL M. STEPHENS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2016-2720

———————————

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00153-TCW, Judge Thomas C. Wheeler.

———————————

Decided: March 9, 2018

———————————

CRAIG S. LAIR, Rose Law Firm, Little Rock, AR, argued for plaintiffs-appellants. Also represented by BYRON JANSEN WALKER.

ANTHONY T. SHEEHAN, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by DAVID A. HUBBERT, JONATHAN S. COHEN.

———————————

Before NEWMAN, WALLACH, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge.*

Appellants Wilton R. Stephens, Jr., and Carol M. Stephens (collectively, the "Stephenses") sued the United States (Government) in the U.S. Court of Federal Claims ("Claims Court"), seeking a refund of federal income taxes and interest. The Government filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, arguing that the Stephenses failed to file a timely tax refund claim with the Internal Revenue Service (IRS). The Claims Court denied the Government's motion to dismiss. *See Stephens v. United States*, 127 Fed. Cl. 660, 660 (2016). The Government filed a motion for reconsideration, which the Claims Court also denied. App'x 3.[1] After the Government requested that the Claims Court certify the case for interlocutory appeal, the Claims Court *sua sponte* "t[ook] another look at the applicable case law and statutory provisions" and granted the Government's motion to dismiss. *Stephens*, 127 Fed. Cl. at 660–61. We affirm.

## BACKGROUND

The Stephenses filed joint federal income tax returns for tax years 1995, 1996, and 1997. During these tax years, Mr. Stephens was a shareholder of SF Holding Corporation ("SF"), a subchapter S corporation.[2] *See generally* I.R.C. §§ 1361 *et seq.* S corporations generally do not pay federal income taxes. *See* I.R.C. § 1363(a). Instead, they pass their tax items through to their shareholders, who report those items on individual tax returns. *See* I.R.C. § 1366. The Stephenses reported passthrough income arising out of investments in SF. At least some of

---

[1]    "App'x" refers to the appendix filed by Appellants.

[2]    SF was formerly named "Stephens Group, Inc." App'x 10.

this income was classified as "passive activity" income on the Stephenses' tax returns.[3]  In addition, the Stephenses reported passive activity losses (which may be deducted from passive activity income) and passive activity credits (which may be claimed against taxes allocable to passive activities).  *See* I.R.C. § 469(d).

The IRS audited SF's returns and the Stephenses' individual returns for 1995 and 1996.  Those tax years were subject to the audit provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324 (codified in scattered sections of Title 26 of the U.S. Code).  Under TEFRA, the IRS had to complete its audit of SF's returns before it could apply any corporate-level adjustments to the passthrough items on the Stephenses' individual returns and finalize its audit of the individual returns.  Because of amendments to the Tax Code, the Stephenses' 1997 return was not subject to TEFRA and was audited separately from the 1995 and 1996 returns.

In April 2003, the IRS sent a notice proposing to disallow certain of the Stephenses' passive activity loss deductions and passive activity credits for 1995 and 1996.  As detailed in a subsequent notice of deficiency, the IRS concluded that Mr. Stephens had materially participated in some of SF's activities.  This material participation meant that income arising from such activities would be considered nonpassive rather than passive, as originally reported by the Stephenses.  The *passive* activity deductions and credits could not be used to offset tax liability arising from *nonpassive* income.  *See* I.R.C. § 469(d).

---

[3]  A "passive activity" is defined in the Tax Code as any activity that "involves the conduct of any trade or business" in which "the taxpayer does not materially participate."  I.R.C. § 469(c)(1).

On December 3, 2007, the corporate audit of SF concluded with a closing agreement that covered only corporate-level adjustments. Completion of the SF audit permitted the IRS to finalize its audit of the Stephenses' 1995 and 1996 returns. On March 24, 2008, the IRS again proposed the disallowance of the Stephenses' 1995 and 1996 passive activity loss deductions and credits in the same amounts proposed in April 2003. On January 21, 2009, the IRS sent the Stephenses a notice of deficiency for 1995 and 1996, again in the same amounts proposed in April 2003 and March 2008. The Stephenses did not contest the notice of deficiency and paid the amount specified by the IRS on January 6, 2010. The limitations period for 1995 and 1996 expired two years later on January 6, 2012. The Stephenses never filed a formal refund claim for 1995 or 1996.

The Stephenses allege that they believed they could carry over their now-disallowed passive activity losses from 1995 and 1996 to 1997 to reduce their income taxes by an amount approximately equal to the increase in their 1995 and 1996 taxes. On July 25, 2006, the Stephenses entered into an agreement with the IRS to extend the deadline for filing a refund claim for 1997 until June 30, 2008. On October 8, 2009, over a year after the June 30, 2008 deadline, the Stephenses mailed an amended tax return for 1997 to the IRS. The amended return sought to carry over the 1995 and 1996 passive activity losses to 1997.

In November 2011, the Stephenses sent a letter regarding their amended return for 1997 in which they invoked the mitigation provisions of the Tax Code. *See* I.R.C. §§ 1311–1314 (mitigation provisions). These provisions, in specified circumstances, "permit a taxpayer who has been required to pay inconsistent taxes to seek a refund of a tax the recovery of which is otherwise barred by [I.R.C.] §§ 7422(a) and 6511(a)." *United States v. Dalm*, 494 U.S. 596, 610 (1990). I.R.C. § 7422(a) states

that no suit for the recovery of any tax alleged to have been erroneously collected may be brought until a "claim for refund or credit has been duly filed" with the IRS. I.R.C. § 6511(a) specifies the limitations period for filing a refund claim.[4] There is no dispute that the limitations period in which the Stephenses could have filed a timely refund claim for 1997 had long expired, on June 30, 2008. *See* Open. Br. 14 ("The period for filing a claim for refund for 1997 expired on June 30, 2008.").

On March 15, 2012, the IRS sent a notice proposing to disallow the Stephenses' refund claim for 1997 because it was untimely and because the mitigation provisions did not save the claim. On April 12, 2012, the Stephenses filed an administrative appeal of the proposed disallowance, in which they invoked, *inter alia*, equitable recoupment in addition to mitigation in an effort to save their untimely refund claim. "Equitable recoupment is a judicially created doctrine . . . used as a defense allowing redress against a timely claim that results in the double inclusion or double exclusion of items, when the correction

---

[4] Section 6511(a) states:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

of such items would be barred by the statute of limitations." 2 Mertens Law of Fed. Income Taxation § 14:3 (2018) (hereinafter, "Mertens") (citing *Bull v. United States*, 295 U.S. 247 (1935)). The IRS rejected the Stephenses' administrative appeal because their refund claim was untimely and neither mitigation nor equitable recoupment applied.

The Stephenses filed suit in the Claims Court. In their complaint, the Stephenses contended that the amended 1997 return that they filed in October 2009 (which would have been an untimely filing for that year) was actually an informal refund claim for tax years 1995 and 1996. It is undisputed that the limitations period for filing a refund claim for 1995 or 1996 did not expire until after the Stephenses filed their amended 1997 return in October 2009. The Stephenses asserted two grounds for relief set out in separate counts in the complaint: (1) statutory mitigation and (2) equitable recoupment.

The Government moved to dismiss for lack of subject matter jurisdiction, arguing, *inter alia*, that the Stephenses had not filed a timely refund claim for 1997 and had not filed *any* refund claim for 1995 or 1996 (refuting the Stephenses' claim that their amended 1997 return qualified as an informal claim for the earlier two years). The Claims Court initially denied the Government's motion, treating the timely filing of a refund claim as merely "an element of the [Stephenses'] cause of action" rather than a jurisdictional prerequisite. The Government filed a motion for reconsideration, which the Claims Court initially denied. The Government moved to certify the case for interlocutory appeal. On August 2, 2016, the Claims Court *sua sponte* reconsidered its prior rulings and granted the Government's motion to dismiss, concluding that a timely refund claim was indeed a "prerequisite for a refund suit." *Stephens*, 127 Fed. Cl. at 661 (citing *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 5 (2008)).

The Stephenses appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARDS OF REVIEW

We review the Claims Court's legal conclusion that it lacked subject matter jurisdiction *de novo*. *See Coast Prof'l, Inc. v. United States*, 828 F.3d 1349, 1354 (Fed. Cir. 2016). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). When, as here, a motion challenges the truth of jurisdictional facts, "[w]e review determinations of the Court of Federal Claims regarding jurisdictional facts for clear error." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003).

## DISCUSSION

"The party seeking to invoke [the Claims Court]'s jurisdiction must establish that jurisdiction exists by a preponderance of the evidence." *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (citation omitted). The United States may only be sued if it expressly consents to suit by waiving sovereign immunity. *Dalm*, 494 U.S. at 608; *see also Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 976 (Fed. Cir. 2017) (citations omitted). The Tucker Act waives sovereign immunity for lawsuits seeking tax refunds, but only when the jurisdictional requirements in the Tax Code for bringing such suits are met. *Clintwood Elkhorn Mining*, 553 U.S. at 4–5, 8–9. One of these requirements is specified in I.R.C. § 7422(a):

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund

or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

*See Clintwood Elkhorn Mining*, 553 U.S. at 4–5. By regulation, taxpayers are required to "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1) (2016). This requirement "is designed both to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006) (internal quotation marks omitted).

The only potential refund claim identified by the Stephenses is their October 2009 filing of an amended return for 1997. *See* Oral Arg. at 0:30–1:32, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-2720.mp3. The Stephenses argue that their amended 1997 return should be understood as a timely informal refund claim for tax years 1995 and 1996. *Id.* The Government counters that the amended 1997 return was not an informal refund claim because it did not adequately apprise the IRS that the Stephenses sought a refund for 1995 or 1996. We agree with the Government.

The Stephenses did not challenge the amount of their 1995 and 1996 taxes in their October 2009 filing with the IRS. To the contrary, the Stephenses stated that the "*agreed upon* adjustments" for 1995 and 1996 "created" the carryovers that they sought to apply to their *1997* taxes. App'x 19 (emphasis added). In *Computervision*, we explained that an informal refund claim must adequately apprise the IRS of the particular year or years for which a refund is sought. 445 F.3d at 1365. Nowhere in the

Stephenses' amended 1997 return or the cover letter accompanying it did the Stephenses adequately apprise the IRS that they were seeking a refund for 1995 or 1996. Because the Stephenses' October 2009 filing was not an informal refund claim for 1995 or 1996, and because this was the only basis on which the Stephenses argued that they filed a timely refund claim under § 7422(a), the Stephenses' suit is barred by the statute of limitations.

However, the Stephenses argue that, even if their suit is legally barred by §§ 6511(a) and 7422(a), their mitigation and equitable recoupment claims remain viable in view of the "equitable purpose" of mitigation and the need to apply principles of equity to "avoid a windfall to the Government." *See* Reply Br. 10–13. For the reasons discussed, *infra*, we disagree.

## I. Mitigation

In general, mitigation allows a taxpayer or the IRS to "correct errors otherwise barred by the statute of limitations" when all requirements in the mitigation provisions are met. Mertens § 14:7; *see TLI, Inc. v. United States*, 100 F.3d 424, 427 (5th Cir. 1996) ("[I]n narrowly defined circumstances, the strictures established by the statutes of repose are loosened by the Tax Code's mitigation provisions."). "The primary purpose of the mitigation provisions is to prevent the inconsistent treatment of items that result in a windfall to either the taxpayer or the Service." Mertens § 14:7 (citing *Costello v. Comm'r of Internal Revenue*, 111 T.C.M. (CCH) 1148 (2016)). However, "Congress did not intend by [the mitigation provisions] to provide relief for inequities in all situations in which just claims are precluded by statutes of limitations." *Olin Mathieson Chem. Corp. v. United States*, 265 F.2d 293, 296 (7th Cir. 1959). To obtain relief under the mitigation provisions, taxpayers "must demonstrate that [they] meet[] the specific requirements" of the provisions. *Id.*

The Fourth Circuit summarized the requirements that must be met for the mitigation provisions to apply:

> Mitigation is permitted when three elements are present: [(1)] there must be "a determination" of tax liability as defined in [I.R.C.] § 1313(a)(1)–(4); [(2)] the determination must fall within one of the circumstances of adjustment described in [I.R.C.] § 1312(1)–(7); and [(3)] depending on which circumstance of adjustment is found, either an inconsistent position must be maintained by the party against whom mitigation will operate, [I.R.C.] § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position, [I.R.C.] § 1311(b)(2).

*Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir. 1987).[5]

Regarding the first element, I.R.C. § 1313(a) defines only four types of "determination[s]" of tax liability that may trigger application of the mitigation provisions: (1) a final decision by a court of competent jurisdiction; (2) a closing agreement under I.R.C. § 7121; (3) a final administrative ruling on a refund claim (unless suit is timely instituted on the claim); and (4) a mitigation agreement

---

[5] The Fourth Circuit's three-part framework is consistent with our prior analysis of the mitigation provisions, *see, e.g.*, *Evans Tr. v. United States*, 199 Ct. Cl. 98, 101–05 (1972), and with Fifth and Seventh Circuit case law discussing the mitigation provisions, *see TLI*, 100 F.3d at 427–29; *Fruit of the Loom, Inc. v. Comm'r*, 72 F.3d 1338, 1341–42 (7th Cir. 1996). Moreover, both parties present their arguments under *Longiotti*'s three-element framework. We agree that this framework accurately summarizes the requirements in §§ 1311–1314.

between the IRS and the taxpayers. The Stephenses allege two determinations that fall under § 1313. First, the Stephenses argue that the closing agreement entered into between SF and the IRS at the conclusion of the IRS's audit of SF was a determination under § 1313(a)(2). Second, the Stephenses assert that the IRS's March 15, 2012 letter denying the Stephenses' claim related to the amended 1997 return was a determination under § 1313(a)(3). The Government argues that neither of these qualifies as a determination under the statutes. We agree with the Government.

As noted by the Government, there has been no closing agreement for the Stephenses' individual income taxes, which are the subject of the instant lawsuit. *See* Resp. Br. 46. The closing agreement between SF and the IRS explicitly stated that the agreement did *not* determine whether business activity of SF was or was not passive activity under I.R.C. § 469 for purposes of any shareholder's individual taxes. S. App'x 52 ¶ 5.[6] The SF closing agreement therefore does not qualify as a "closing agreement" for the Stephenses' taxes under § 1313(a)(2).

The IRS's March 15, 2012 letter denying the Stephenses' claim related to their amended 1997 return is likewise not a "final determination" because such a determination could only come at the end of the instant litigation, which was initiated to challenge the IRS's decision. Section 1313(a)(3)(B) excepts from its coverage any claim for refund that was denied where "suit is instituted" on that claim, and the claim could only become a determination under § 1313(a)(1) at the conclusion of the instant litigation. *See* Treas. Reg. § 1.1313(a)-1 ("A determination may take the form of a decision by the Tax Court of the United States or a judgment, decree, or other

---

[6] "S. App'x" refers to the appendix filed by the Government.

order by any court of competent jurisdiction, *which has become final*." (emphasis added)). The Stephenses' mitigation claim fails because they have not identified any determination of tax liability that falls under § 1313(a).

Additionally, the mitigation claim fails because the Stephenses have not shown applicability of any of the seven "circumstances of adjustment described in [I.R.C.] § 1312(1)–(7)" under *Longiotti*'s second requirement. 819 F.2d at 68. The Stephenses contend that circumstance four (codified as § 1312(4)) applies in this case, because the complaint alleges that "passive loss deductions were denied for tax years 1995 and 1996, and the carryforward of these losses were again denied for 1997." Open. Br. 17. Section 1312(4) authorizes an adjustment where "[t]he determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year." I.R.C. § 1312(4). However, § 1312(4) is subject to an important exception set out in § 1311(b)(2)(B):

> In the case of a determination described in [§] 1312(4) (relating to disallowance of certain deductions and credits), adjustment shall be made under this part only if credit or refund of the overpayment attributable to the deduction or credit . . . was not barred, by any law or rule of law, at the time the taxpayer first maintained before the Secretary or before the Tax Court, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates.

Section 1311(b)(2)(B) excludes the Stephenses' refund claim from coverage by the mitigation provisions, regardless of whether their claim is for 1997 or for 1995 and 1996. First, as explained, *supra*, the Stephenses' amended 1997 return was untimely filed—and, therefore, barred by the statute of limitations—for tax year 1997. Second,

the Stephenses' argument that their amended 1997 return was an informal claim for 1995 and 1996—presented for the first time in their complaint filed in 2015—was untimely "maintained" under § 1311(b)(2)(B). The IRS defined what it means to "maintain" a claim for a deduction or credit under this subsection of the statute in Treas. Reg. § 1.1311(b)-2(b):

> The taxpayer will be considered to have first maintained in writing before the Commissioner or the Tax Court that he was entitled to such deduction or credit when he first formally asserts his right to such deduction or credit as, for example, in a return, in a claim for refund, or in a petition (or an amended petition) before the Tax Court.

The Stephenses first claimed a refund under their current theory—that their 1997 amended return was an informal claim for 1995 and 1996—when they filed their complaint in this suit in 2015, well after the limitations period for 1995 and 1996 expired in 2012. Even assuming that the Stephenses' complaint qualifies as a valid way to "maintain" entitlement to deductions or credits under this rule, an issue we need not decide, the Stephenses' complaint was filed more than three years after they were first "barred" from asserting any claim for refund for 1995 or 1996 under the statute of limitations. Prior to filing their complaint in 2015, the Stephenses never challenged the changes to their 1995 or 1996 tax liability imposed by the IRS. Therefore, the Stephenses' mitigation claim fails for the additional reason that § 1312(4) does not apply as a circumstance of adjustment under *Longiotti*'s second requirement.

## II. Equitable Recoupment

Finally, the Stephenses argue that they have pleaded sufficient facts to support a claim for equitable recoupment. Under the doctrine of equitable recoupment, "a

party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *Dalm*, 494 U.S. at 608. In *Dalm*, the Supreme Court stated that, "[t]o date, we have not allowed equitable recoupment to be the sole basis for jurisdiction." *Id.* Instead, the Supreme Court explained that the doctrine has been applied only where "there was no question but that the courts in which the refund actions were brought had jurisdiction." *Id.* Taxpayers may assert equitable recoupment only "in a timely proceeding." As already discussed, *supra*, the Stephenses' claims are untimely.

To allow the Stephenses' equitable recoupment to survive the Government's motion to dismiss would be to overlook the Supreme Court's instruction that the Government "is immune from suit, save as it consents to be sued" and that "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (internal quotation marks omitted). "A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms." *Id.* When a plaintiff's refund claim is barred by the statute of limitations and does not qualify under the mitigation provisions, allowing the plaintiff to "maintain a suit for refund on the basis of equitable recoupment . . . would be doing little more than overriding Congress' judgment as to when equity requires that there be an exception to the limitations bar." *Id.* at 610. In view of *Dalm* and the principle that "waivers of sovereign immunity by Congress 'cannot be implied but must be unequivocally expressed,'" the Stephenses' equitable recoupment claim cannot serve as an independent basis for jurisdiction in this case. *Id.* at 608 (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

CONCLUSION

We have considered the Stephenses' remaining arguments and find them unpersuasive.[7]  Accordingly, the Claims Court's order granting the Government's motion to dismiss for lack of subject matter jurisdiction is

**AFFIRMED**

---

[7]    At oral argument, counsel for the Stephenses argued that they had "no notice that they were impacted" by the 1995 and 1996 adjustments resulting from the SF audit until January 2009.  Oral Arg. at 28:03–28:11.  As noted, *supra*, the IRS proposed disallowances in April 2003 and again in March 2008 in the exact amounts that were eventually assessed and paid by the Stephenses.  The Stephenses were given enough notice to file a timely general refund claim for 1997 before the limitations period expired in June 2008.  *See generally Computervision*, 445 F.3d at 1368–69 (describing general refund claim doctrine).  The Stephenses could have later perfected the general refund claim once the IRS sent an official notice of deficiency specifying the precise amount owed.  The Stephenses did none of the above.