**Kunihiko IWATA, Plaintiff,**

v.

**STRYKER CORPORATION and Matsumoto Medical Instruments, Incorporated, Defendants.**

**No. Civ.A.4:98CV962C.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 5, 1999.

Rod Tanner, Sherrie A. Schroder, Rod Tanner & Associates, Forth Worth, TX, for plaintiff.

Brian S. Greig, Sherrard L. Hayes, Fulbright & Jaworski, L.L.P., Austin, TX, Rob Ghio, Fulbright & Jaworski, L.L.P., Dallas, TX, for defendants.

## *ORDER*

CUMMINGS, District Judge.

On this day, the Court considered Defendants Stryker Corporation ("Stryker") and Matsumoto Medical Instruments' ("Matsumoto") Motion to Dismiss, filed on January 6, 1999. After being granted an extension, Plaintiff Kunihiko Iwata filed his Response on February 9, 1999. Defendants filed their Reply on February 24, 1999. Having considered all of the rele-

vant arguments and evidence, this Court is of the opinion that Defendants' Motion to Dismiss should be **GRANTED**.

## I. BACKGROUND

Plaintiff brings this suit against Stryker and Matsumoto for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, alleging race and national origin discrimination and retaliation. Plaintiff also brings a claim against Stryker and Matsumoto for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[1]

Plaintiff, a citizen of Japan, was employed from October 1, 1996 through November 6, 1997 as the Chairman and President of Matsumoto, a Japanese subsidiary of its American parent company, Stryker. Matsumoto distributes various medical products, including Stryker's, solely in Japan and does no business in the United States. When Plaintiff was hired, he lived in the United States as a resident alien; however, the position as president of Matsumoto required Plaintiff to relocate from the United States back to his native Japan. Although Plaintiff made several trips to the United States in his capacity as Matsumoto's president, Plaintiff continued to live in Japan during his tenure as president. On November 6, 1997, Plaintiff was discharged from his position as President of Matsumoto. Following his dismissal, Plaintiff returned to the United States to live as a resident alien and initiated the present suit.

## II. RULE 12(B)(1) STANDARD

■ Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED.R.CIV.P. 12(b)(1). Lack of sub-ject matter jurisdiction may be found in any one of three instances, through: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

■ The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex. 1995), *aff'd*, 102 F.3d 551 (5th Cir.1996). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980). A party may claim that subject matter jurisdiction is lacking by virtue of the plaintiff's inability to prove the elements of the federal cause of action in question. *See O'Quinn v. Manuel*, 773 F.2d 605 (5th Cir.1985).

■ When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should usually consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

■■ In examining a Rule 12(b)(1) motion, the district court is empowered to

1. In Plaintiff's Response, Plaintiff states that he inadvertently included a claim under the ADEA in his Complaint. He further states that he has not asserted a claim under the ADEA and that he intends to amend his Complaint to remove all reference to the ADEA following the Court's ruling on Defendants' Motion to Dismiss. Since Plaintiff has not voluntarily dismissed his ADEA claim prior to the Court's consideration of Defendants' Motion, this Court therefore views the claim as still viable. Consequently, this Court will address Plaintiff's ADEA claim in considering Defendants' Motion.

consider matters of fact which may be in dispute. *Williamson*, 645 F.2d at 413. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir.1998).

### III. Discussion

Plaintiff contends that Title VII and the ADEA apply to the employment relationship at issue and that both corporations are liable because Matsumoto, although a Japanese corporation, is a single employer with and under the control of Stryker. While it is uncontested that Matsumoto is in fact a subsidiary of Stryker, whether Stryker controls Matsumoto to such a degree that Stryker should be subject to liability is an issue that is hotly contested. However, since the Court finds that Plaintiff is not a protected individual within the ambit of Title VII or the ADEA, as outlined in detail below, it is unnecessary to determine whether Stryker and Matsumoto actually constitute a single employer.

### A.

Prior to the enactment of the Civil Rights Act of 1991, Title VII did not apply to United States citizens employed in foreign countries. Shortly before the 1991 Act took effect, the Supreme Court in *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("*ARAMCO*"), held that Title VII of the Civil Rights Act of 1964, as amended, does not apply extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad. *Id.* at 246, 111 S.Ct. 1227. Under the Court's decision, employers were not liable under Title VII for employment discrimination occurring against United States citizens outside of the United States. However, by year's end, Congress ostensibly declared its contrary legislative intent with the enactment of the Civil Rights Act of 1991.

The Civil Rights Act of 1991 Act amended Title VII to give it a limited extraterritorial reach. This purpose was effected in part through changes to two provisions. First, the Act expanded the definition of "employee" under Title VII to include United States citizens employed abroad, thereby legislatively superseding *ARAMCO*. Specifically, 42 U.S.C. § 2000e(f) now provides that "[w]ith respect to employment in a foreign country, such term [employee] includes an individual who is a *citizen of the United States*." 42 U.S.C. § 2000e(f) (emphasis added). Ergo, it seems apparent that unless a United States citizen, a person employed abroad is not an "employee" under Title VII. Second, Congress further outlined the applicability of Title VII to foreign employment when it amended 42 U.S.C. § 2000e–1. Section 2000e–1(a) states, "This subchapter *shall not* apply to an employer with respect to the employment of aliens outside any State...." 42 U.S.C. § 2000e–1(a) (emphasis added). In addition, addressing the issue of foreign subsidiaries, § 2000e–1(c) provides:

(1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 2000e–2 or 2000e–3 of this title engaged in by such corporation shall be presumed to be engaged in by such employer.

(2) Sections 2000e–2 and 2000e–3 of this title shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

(3) For the purposes of this subsection, the determination of whether an employer controls a corporation shall be based upon—

(A) the interrelation of operations;

(B) common management;

(C) the centralized control of labor relations; and

(D) the common ownership or financial control,

of the employer and the corporation.

42 U.S.C. § 2000e–1(c). Together, these sections establish that Title VII applies abroad only when (1) the employee is a citizen of the United States and (2) the corporation is controlled by an American employer. Non-citizens working outside the United States are not protected because they are not considered employees. "The general rule is that with respect to foreign employment, Title VII applies only to American citizens employed abroad by American companies or their foreign subsidiaries." *Russell v. Midwest–Werner & Pfleiderer, Inc.*, 955 F.Supp. 114, 115 (D.Kan.1997).

 In the case before the Court, it is undisputed that Stryker is the American parent of its foreign subsidiary, Matsumoto. It is also uncontested that, although Plaintiff was a resident alien in the United States prior to and after his employment with Matsumoto, he was a citizen of Japan at all relevant times. During Plaintiff's term as president of Matsumoto, he lived and carried out his duties in Japan and was at no time a citizen of the United States. In light of these facts alone, it is abundantly clear to the Court that Plaintiff does not fall within the sphere of protection contemplated by Title VII.

Plaintiff argues *ad infinitum* that Stryker controlled Matsumoto, thereby making Stryker and Matsumoto a single employer under § 2000e–1(c). According to Plaintiff, jurisdiction is therefore proper. However, the Court finds that the degree of control, if any, that Stryker exercised over Matsumoto is irrelevant. Even if the Court accepted as true the proposition that Stryker controlled Matsumoto, nothing in Title VII, including § 2000e–1(c), exempts Plaintiff from the provision contained in § 2000e–1(a) which specifically states that the statute does not apply to aliens employed outside any state. If Congress had intended for Title VII to include foreign nationals working outside of the United States, whether for foreign corporations or American subsidiaries, it certainly had the opportunity to do so. It is clear from the plain language of 42 U.S.C. § 2000e(f) and § 2000e–1 that Congress intentionally excluded individuals such as Plaintiff from the protections of Title VII. Accordingly, this Court finds that it is without subject-matter jurisdiction over Plaintiff's Title VII discrimination claims.

### B.

The ADEA provisions defining "employee" [2] and outlining foreign employment [3] are virtually identical to those contained in Title VII. Therefore, the analysis of Plaintiff's ADEA claim is identical to the analysis of Plaintiff's Title VII race and national origin discrimination claims. In *Denty v. SmithKline Beecham Corp.*, 907 F.Supp. 879 (E.D.Pa.1995), the court held that "the ADEA applies abroad only when (1) the employee is an American citizen and (2)

---

2. Under the ADEA, the definition of "employee" provides that "[t]he term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. § 630(f).

3. Concerning foreign employment, 29 U.S.C. § 623(h) provides:

(1) If an employer controls a corporation whose place of incorporation is in a foreign country, any practice by such corporation prohibited under this section shall be presumed to be such practice by such employer.

(2) The prohibitions of this section shall not apply where the foreign employer is a foreign person not controlled by an American employer.

(3) For the purpose of this subsection the determination of whether an employer controls a corporation shall be based upon the—

(A) interrelation of operations;

(B) common management;

(C) centralized control of labor relations, and

(D) common ownership or financial control,

of the employer and the corporation.

29 U.S.C. § 623(h).

the employer is controlled by an American employer." *Id.* at 883. Again, it is undisputed that Plaintiff is not a citizen of the United States and that he lived in Japan while he was president of Matsumoto. Accordingly, this Court finds that it is without subject-matter jurisdiction over Plaintiffs ADEA claim.

### IV. CONCLUSION

After considering all of the parties' arguments and evidence, this Court finds that it lacks subject-matter jurisdiction over Plaintiff's Title VII and ADEA claims. Accordingly, Defendants' Motion to Dismiss is **GRANTED.**

All relief not expressly granted is denied.

SO ORDERED.

### *JUDGMENT*

For the reasons stated in the Court's order of even date,

IT IS ORDERED, ADJUDGED, AND DECREED that the above-styled and -numbered cause is **DISMISSED** without prejudice.