**John Thomas CLOUD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV. A. H–99–4359.

United States District Court, S.D. Texas, Houston Division.

Dec. 22, 2000.

Grant. Cook, Thompson Knight et al, Cornel A Williams, Attorney at Law, Sean F Greenwood, Attorney at Law, Houston, TX, for Lawrence H Ramming, John Thomas Cloud, consolidated plaintiffs.

Richard R Stone, Sr, U S Dept of Justice, Washington, DC, for United States of America, defendants.

## ORDER

GILMORE, District Judge.

Pending before the Court is Defendant United States of America's motion to dismiss Plaintiff John Thomas Cloud's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Instrument No. 34). Having considered the submissions of the parties and the applicable law, the Court finds that the motion should be **GRANTED.**

## I.

Plaintiff John Thomas Cloud ("Cloud") brings this action under the Federal Torts Claims Act ("FTCA") against Defendant United States of America ("United States") alleging malicious prosecution, wrongful interference, continued harassment, and damages arising out of a grand jury indictment of Cloud, his subsequent trial, and ultimate acquittal.

In 1994, pursuant to an investigation by the United States, a grand jury indicted Cloud and several co-defendants in a 27-count indictment for conspiracy to defraud banks, bank fraud, wire fraud, bank larceny, bank bribery, misapplication of bank funds, false entries in bank records, and money laundering. A trial was conducted from November 1995 through January 1996. In January 1996, the defendants moved for dismissal of the indictment and acquittal pursuant to Federal Rule of Criminal Procedure 29 on the basis of prosecutorial misconduct. Judge Kenneth M. Hoyt of the United States District Court for the Southern District of Texas granted the motions to dismiss and acquit and found that, *inter alia,* the United States engaged in prosecutorial misconduct by failing to disclose *Brady* materials, and that the Federal Bureau of Investigation agent's testimony was inconsistent with his grand jury testimony. *United States v. Ramming,* 915 F.Supp. 854, 868 (S.D.Tex.1996).

Paul Licata ("Licata") and Lawrence Ramming ("Ramming") were two of Cloud's co-defendants. Licata filed suit for malicious prosecution in the Southern District of Texas on January 13, 1997. *Licata v. United States,* Civ. A. No. H–97–0093. Similarly, Ramming filed suit for malicious prosecution in the Southern District of Texas on December 14, 1999. *Ramming v. United States,* Civ. A. No. 99–4359. In the *Licata* litigation, Judge Lynn N. Hughes ordered the United States to release the transcripts of the grand jury proceedings that led to the original indictment in 1994. In December 1998, Licata offered the transcripts into the record to bolster his claim of malicious prosecution. Judge Hughes held a bench trial from December 8, 1998, through December 10, 1998. Before a judgment was entered, however, the parties settled.

Cloud presented his administrative claim of malicious prosecution to the United States Department of Justice ("DOJ") on March 18, 1999, and presented a supplemental claim on November 1, 1999. (Instrument No. 37, at 2). Cloud had earlier filed a voluntary bankruptcy petition on

November 26, 1997. (Instrument No. 37, at 2). On October 20, 1999, the DOJ denied Cloud's administrative claim. Subsequently, on December 30, 1999, Cloud filed his action against the United States in the Southern District of Texas before Judge David Hittner. On April 11, 2000, Ramming and Cloud's suits were consolidated in this Court under Civil Action Number 99–4359. (Instrument No. 12). Accordingly, Cloud's second amended original complaint was re-docketed in this Court on May 19, 2000. (Instrument No. 37). In his second amended complaint, Cloud contends that he did not discover the facts underlying his cause of action for malicious prosecution until December 1998. In any event, Cloud maintains, the two-year FTCA statute of limitations was tolled for two years upon the filing of his voluntary bankruptcy petition. (*Id.* at 2).

On March 21, 2000, prior to the consolidation of Ramming and Cloud's suits, the United States filed a motion to dismiss Ramming's complaint for lack of jurisdiction and for failure to state a claim, arguing that Ramming failed to timely file his suit within the FTCA's two-year statute of limitations. On the same day, the United States filed a similar motion to dismiss Cloud's complaint before Judge Hittner. In an Order dated July 26, 2000, the Court granted the United States' motion to dismiss Ramming's complaint. (Instrument No. 43).

On May 19, 2000, following the consolidation of Ramming and Cloud's suits, the United States' motion to dismiss Cloud's complaint and memorandum of law were re-docketed in this Court. (Instrument Nos. 34 and 35). In its motion, which it alternatively termed a motion for summary judgment, the United States argues that Cloud's claim was time-barred under the FTCA because it was not presented to the DOJ within two years of its accrual. It maintains that Cloud knew or had reason to know of the injury forming the basis of his malicious prosecution claim when Judge Hoyt issued his opinion acquitting

Cloud on January 12, 1996. Under this rationale, the United States argues that Cloud had until approximately January 13, 1998, to file his administrative claim. With respect to Cloud's assertion that he is protected by a two-year tolling period because he filed a bankruptcy petition in November 1997, the United States contends that, under section 108(b) of the Bankruptcy Code, the bankruptcy filing only tolled the FTCA statute of limitations for sixty days. Because the bankruptcy filing would only toll the FTCA statute of limitations until approximately January 26, 1998, according to the United States, Cloud's March 1999 administrative claim presentment was time-barred.

Cloud filed his response to the United States' motion on April 10, 2000. The response was re-docketed in this Court on May 19, 2000. (Instrument No. 38). In his response, Cloud initially argues that the United States may only seek a "partial dismissal" because 11 U.S.C.A. § 106(c) (2000) provides for the abrogation of sovereign immunity independent of the FTCA's limited waiver of sovereign immunity. The crux of Cloud's argument, however, is that the FTCA statute of limitations did not begin accruing on January 12, 1996, because he did not know "what the [United States] had said and done behind the closed doors of the Grand Jury" until he obtained the grand jury proceedings transcripts in December 1998. Alternatively, even assuming the limitations period began to run on January 12, 1996, Cloud maintains that 11 U.S.C.A. § 108(a) tolled the limitations for two years upon the filing of his voluntary bankruptcy petition. According to Cloud, the two-year tolling protection applies because the presentment of an administrative claim to the DOJ qualifies as a "commence[ment of] an action" as required by section 108(a). Finally, Cloud maintains that, in any event, the FTCA limitations period was tolled because in September 1999 the United States Bankruptcy Court for the Western District of Texas ("bankruptcy court") or-

dered "all limitations periods for all other claims under applicable law [ ] tolled and extended until [Cloud's bankruptcy] case is closed or a final decree is entered." (Instrument No. 38, Ex. 5, at 3).

The United States' reply was filed on April 27, 2000.[1] (Instrument No. 17). Initially, it asserts that its motion is not a "partial dismissal" because, in any event, Cloud has failed to abide by the FTCA's statute of limitations. The United States also reiterates that the FTCA statute of limitations began accruing on January 12, 1996, because Cloud was aware of enough facts to support a claim of malicious prosecution. In addition, the United States argues that the case law does not consider an administrative claim an "action" within the meaning of 11 U.S.C.A. § 108(a) so as to warrant the application of a two-year tolling period. Lastly, the United States contends that the bankruptcy court's order tolling "all limitations periods for all other claims under applicable law," (Instrument No. 38, Ex. 5, at 3), lacked jurisdiction because the FTCA's limitations period is only a limited waiver of sovereign immunity.

On August 31, 2000, as a consequence of this Court's Order dismissing Ramming's complaint, (Instrument No. 43), Cloud filed a supplemental response to the United States' motion to dismiss. (Instrument No. 45). Cloud argues that, even if he had conducted an investigation and sought the grand jury transcripts, his "efforts would not have lead (*sic*) to receipt of the grand jury transcripts before June, 1997." (*Id.* at 3). That is, because former co-defendant Licata's efforts did not result in the release of the transcripts until June 1997, Cloud could not be expected, as a matter of law, to obtain them any earlier. Because June 1997 was the earliest date he could have received the transcripts, the two-year FTCA limitations period would expire in June 1999. Consequently, according to Cloud, his March 1999 adminis-

trative claim presentment fell within this statutory time period.

## II.

### A.

■ "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Miss. Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). A district court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir.1989). In examining a Rule 12(b)(1) motion, the Court is empowered to consider matters of fact which are in dispute. *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). The party asserting jurisdiction bears the burden of establishing it when the Court's subject matter jurisdiction is challenged. *See Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir.1995). However, any uncontroverted facts in the complaint must be accepted as true. *Gaubert v. United States,* 885 F.2d 1284, 1285 (5th Cir.1989), *rev'd on other grounds,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Moreover, the Court must construe the complaint broadly and liberally. *Id.*

■ When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should usually consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. Pasadena,* 561 F.2d 606, 608 (5th Cir.1977); *Kunihiko Iwata v. Stryker*

---

1. The United States' reply, unlike its motion to dismiss and Cloud's subsequent response, was not re-docketed because it was filed originally in this Court.

*Corp.,* 59 F.Supp.2d 600, 602 (N.D.Tex. 1999). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The Court's dismissal of a plaintiff's case because the Court lacks subject matter jurisdiction is not an adjudication of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

A motion to dismiss challenging the Court's subject matter jurisdiction under Rule 12(b)(1) should only be granted "if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n,* 143 F.3d at 1010 (citing *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992)); *Santerre v. Agip Petroleum Co.,* 45 F.Supp.2d 558, 565 (S.D.Tex.1999).

**B.**

Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Such dismissals, however, are rare, *Clark v. Amoco Production Co.,* 794 F.2d 967, 970 (5th Cir.1986), and only granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *Vines v. City of Dallas, Texas,* 851 F.Supp. 254, 259 (N.D.Tex. 1994), *aff'd,* 52 F.3d 1067 (5th Cir.1995).

In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the Court accepts as true all allegations contained in the plaintiff's complaint. *Gargiul v. Tompkins,* 704 F.2d 661, 663 (2d Cir.1983), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,*

677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Id.* "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark,* 794 F.2d at 970.

**III.**

**A.**

The United States argues that Cloud's complaint should be dismissed because he failed to present an administrative claim with the appropriate federal agency prior to the expiration of the statute of limitations in the FTCA. The FTCA provides a limited waiver of the United States' sovereign immunity from suit. The FTCA is also a grant of jurisdiction to federal court in those cases where the United States has waived immunity and has consented to be sued. Cloud filed this action for malicious prosecution and damages pursuant to the law enforcement exception to sovereign immunity in 28 U.S.C.A. § 2671 (2000).

A prerequisite to the commencement of an action against the United States in federal court is the presentment of an administrative claim. *Brown v. Nationsbank Corp.,* 188 F.3d 579, 589–90 (5th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000). The FTCA provides that a plaintiff must present an administrative claim to the appropriate federal agency within two years of the claim's accrual:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C.A. § 2401(b) (2000).

Here, the crux of the dispute is ascertaining when Cloud's cause of action ac-

crued. Cloud and several other co-defendants were acquitted on January 12, 1996. *United States v. Ramming*, 915 F.Supp. 854 (S.D.Tex.1996). His administrative claim was presented to the DOJ on March 18, 1999. (Instrument No. 37, at 2). On October 20, 1999, the DOJ denied Cloud's claim. (*Id.*). Cloud maintains that his claims accrued, and the limitations period began, only when he learned of the contents of grand jury transcripts released during former co-defendant Licata's trial in December 1998.[2] (Instrument No. 38, at 9). In contrast, the United States contends that the claims accrued, and the limitations period began, when Cloud was acquitted in January 1996. (Instrument No. 35, at 4).

▌ A cause of action under federal law accrues within the meaning of section 2401(b) " 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Brown*, 188 F.3d at 589–90 (quoting *Moore v. McDonald*, 30 F.3d 616, 620–21 (5th Cir.1994)). In *Brown*, the Fifth Circuit ruled that the plaintiff's knowledge of his injury depends upon two elements: "(1) the existence of the injury; and (2) the connection between the injury and the defendant's actions." 188 F.3d at 590 (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995)). "Moreover, a plaintiff need not have actual knowledge" of the injury "if the circumstances would lead a reasonable person to investigate further." *Piotrowski*, 51 F.3d at 516 (citations omitted).

▌ Before a malicious prosecution claim can accrue, an underlying criminal proceeding must terminate in the plaintiff's favor. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994); *see also* Tex. Civ. Prac. & Rem.Code § 16.002(a) (Vernon 1999) ("For purposes of malicious prosecution actions, prosecution ends, and cause of action ac-

crues, when formal criminal proceedings are terminated"). Judge Hoyt's opinion granting acquittal was issued on January 12, 1996, thereby terminating the proceeding in Cloud's favor. *See Ramming*, 915 F.Supp. at 857.

Cloud's injury originates from the same set of facts underlying the malicious prosecution lawsuit initiated by former co-defendant Ramming. In an Order dated July 26, 2000, (Instrument No. 43), this Court ruled that Ramming's suit was time-barred. Like Cloud, Ramming was acquitted on January 12, 1996. Ramming presented his administrative claim to the DOJ on February 5, 1999, and it was denied, along with Cloud's claim, on October 20, 1999. Cloud maintains, in fact, that "his cause of action for malicious prosecution, like the similar claim of Ramming, did not accrue prior to December, 1998." (Instrument No. 30, at 2). For purposes of determining whether the statute of limitations period expired, there is no evidence that Cloud was in a position at all dissimilar to Ramming.

In the Order dismissing Ramming's claim (Instrument No. 43), this Court determined that Ramming knew of his injury when he was indicted and tried. As to the second prong of the accrual test, Ramming argued that he was not put on notice of the connection between his injury and the United States' actions until he obtained access to the grand jury transcripts in December 1998. Only when he read the transcripts, Ramming asserted, could he have known of the United States' allegedly wrongful actions. The United States contended that Ramming should have learned of the connection between his injury and the United States' actions upon his acquittal on January 12, 1996. According to the United States, Ramming's claim would have been timely presented had he diligently investigated and sought legal advice

---

**2.** Although not determinative, it is worth noting that Cloud's attorney on November 9, 1999, mailed a letter to a DOJ representative stating, among other things, that Cloud's

claim "accrued when the underlying criminal case against Mr. Cloud was finally disposed [on January 12, 1996]." (Instrument No. 35, Ex. 1, at 1).

as former co-defendant Licata did in asking for the grand jury transcripts. Ultimately, this Court found the United States' reasoning persuasive and ruled that Ramming should have known of the connection at the time of his acquittal. Even were the Court to disregard the United States' actions at trial for purposes of determining when Ramming was put on notice, as Ramming urged, Judge Hoyt's opinion on January 12, 1996, discussed the fact that the United States' behavior at the grand jury proceeding was suspect:

> [A] comparison of the 302 statements of witnesses to the same witnesses' Grand Jury testimony is revealing. The FBI agent took extensive liberties, choosing conclusory words that caused that statements to fit within the government's theory of the case. Assuming that this conduct was merely overzealousness, the error was exposed during the Grand Jury testimony of the same witnesses. Without a doubt, this disparity came to the United States Attorney's attention because, the tone and tenor of the questioning of the witnesses before the Grand Jury is also revealing, to say the least.

*Ramming,* 915 F.Supp. at 868.

Furthermore, this Court held that, even if Ramming did not know for a fact that the United States had engaged in misconduct, he apparently made no effort to ascertain the truth as to what did occur at the grand jury proceedings. The Court noted that on certain occasions plaintiffs have successfully petitioned Texas courts for release of grand jury transcripts in cases where, "in the judgment of the court, it became material to the administration of justice that disclosure be allowed." *Stern v. State ex rel. Ansel,* 869 S.W.2d 614 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Because Ramming was put on notice upon his acquittal in January 1996, his claims became time-barred after January 13, 1998. *See* 28 U.S.C.A. § 2401(b) (2000).

�no ▪ Here, like Ramming, Cloud knew he was injured when he was indicted and tried. Under the *Brown* accrual framework, the question then arises whether Cloud was put on notice of "the connection between the injury and the defendant's actions." 188 F.3d at 590 (holding that the plaintiff's knowledge of his injury depends upon two elements: "(1) the existence of the injury; and (2) the connection between the injury and the defendant's actions").

Cloud argues that "his cause of action for malicious prosecution, like the similar claim of Ramming, did not accrue prior to December, 1998." (Instrument No. 30, at 2). Although he acknowledges that he "possessed some facts in support of a claim for malicious prosecution," (Instrument No. 38, at 9), on January 12, 1996, he "did not and could not know what the Government has said and done behind the closed doors of the Grand Jury" until the grand jury transcripts were released at Licata's December 1998 trial. (*Id.*). The United States argues that Cloud should have known of the connection between his injury and the United States' actions upon his acquittal on January 12, 1996. According to the United States, Cloud had two years to investigate and present an administrative claim, yet failed to do so.

▪ A claim under the FTCA accrues when the plaintiff learns of the connection between his injury and the defendant's actions, not when the plaintiff learns of the legal or proximate cause of his injury. *See United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) (holding that accrual of a cause of action does not await plaintiff's awareness that the injury was negligently inflicted, but, rather, plaintiff armed with facts is not excused from failure to seek advice as to whether his legal rights have been invaded). Although he knew of his injury by January 1996, Cloud maintains that he did not know of the connection between his injury and the United States' actions until the contents of the grand jury transcripts were revealed in December 1998. This

position, however, conflicts with Cloud's argument that he "possessed some facts in support of a claim for malicious prosecution" in January 1996. (Instrument No. 38, at 9). If, as Cloud contends, he was aware of facts to support a malicious prosecution claim in January 1996, then he most certainly knew of the connection between his injury and the United States' actions. Cloud's position is further belied by his assertion that he "was not aware of the facts underlying a *viable* claim for malicious prosecution until December, 1998." (Instrument No. 38, at 13) (emphasis added). A plaintiff need not realize that a legal cause of action exists; a plaintiff need only be aware of the facts that would support a claim. *Piotrowski*, 51 F.3d at 516 (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983)). Cloud's statement that he "possessed some facts in support of a claim for malicious prosecution," (Instrument No. 38, at 9), demonstrates that the FTCA statute of limitations began accruing in January 1996.

Even if Cloud did not know for a certainty of the connection between his injury and the United States' actions, he did not make any effort to ascertain the truth as to what happened at the grand jury proceedings. *See Piotrowski*, 51 F.3d at 516 (holding that a plaintiff need not have actual knowledge of his injury "if the circumstances would lead a reasonable person to investigate further"). After witnessing the United States' actions at trial, and subsequently learning of the United States' actions in the grand jury proceedings through Judge Hoyt's opinion, Cloud has not alleged any facts indicating that he tried to obtain the grand jury transcripts. In fact, Cloud justifies his failure to investigate further by arguing that his "efforts

would not have lead (*sic*) to receipt of the grand jury transcripts before June, 1997." (Instrument No. 45, at 3). Cloud pins this justification on his belief that, because former co-defendant Licata did not obtain the release of the grand jury transcripts until June 1997, Cloud's investigation would have resulted in the same outcome. Consequently, Cloud argues that the statute of limitations began to accrue in June 1997, not January 1996, thereby placing his administrative claim to the DOJ within the FTCA statute of limitations.

■■■■■ Although the principles of equitable tolling apply to the statute of limitations under the FTCA, *Perez v. United States*, 167 F.3d 913, 917 (5th Cir.1999), Cloud's circumstances do not justify its use.[3] *See id.* at 919 (holding that equitable tolling "is not [a doctrine] that trial courts have discretion to use whenever they please . . . [because] [s]tatutes of limitations serve a vital role in blocking stale claims"). In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990), the Supreme Court held that equitable tolling is permissible "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." Here, Cloud acknowledges that he did not investigate what happened in the grand jury proceedings. (Instrument No. 45, at 3). Further, there is no allegation that the United States "induced or tricked" Cloud into allowing the statute of limitations to pass.

---

**3.** Equitable tolling principles may not apply in Cloud's case, in any event. In his second amended original complaint, Cloud did not allege equitable tolling of the FTCA statute of limitations. *See Richard v. Ross*, No. Civ.A. 98–1676, 1998 WL 915865, at *4 (E.D.La. Jan.4, 1998) (holding that "[i]f the equitable

tolling theory applies [in the context of a civil rights lawsuit], it should be alleged in the complaint"). His only assertion of tolling relates to the tolling provisions in 11 U.S.C.A. § 108 (2000). (Instrument No. 37, at 2). The Court will independently address Cloud's section 108 tolling arguments. *See infra* Part B.

Equitable tolling should nevertheless apply, according to Cloud. He cites *Piotrowski*, 51 F.3d 512 (5th Cir.1995), as support for his argument. In *Piotrowski*, the victim of a murder attempt brought suit against the City of Houston Police Department in 1993 claiming that it prevented an informant from warning her about the pending murder attempt in 1980. Although it affirmed the dismissal of the victim's claim as time-barred, the Fifth Circuit held that the limitations period did not begin accruing in 1980 because "[w]hen a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled." *Id.* at 517. Unlike *Piotrowski*, however, there is no indication that the United States "took active steps to suppress any information," *Id.*, given that Cloud and his former co-defendants knew the grand jury proceedings occurred. Moreover, whereas the *Piotrowski* plaintiff claimed that she was completely unaware for 13 years that the police had any knowledge of the murder attempt, *Id.* at 514, Cloud knew that he had a claim of malicious prosecution in January 1996. (Instrument No. 38, at 9) (stating that "Cloud and the other co-defendants possessed some facts in support of a claim for malicious prosecution").

In this regard, Cloud alternatively argues that tolling is appropriate because the bankruptcy court ordered on September 9, 1999, that "all limitations periods for any other claims under applicable law are tolled and extended until this case is closed or a final decree is entered." (Instrument No. 38, Ex. 5, at 3). The bankruptcy court's order is not binding, however, because the FTCA's two-year statute of limitations had already expired on approximately January 13, 1998. Even tolling the FTCA statute of limitations period pursuant to 11 U.S.C.A. § 108 (2000), as Cloud urges, still renders the bankruptcy court's order untimely. That is, because the Court finds under section 108(b) that Cloud's FTCA limitations period could only be tolled for a maximum of 60 days, *see infra* Part B, Cloud had, at most, until approximately January 26, 1998 to file his claim with the DOJ. Because the Court finds that the FTCA limitations period already lapsed on the date of the bankruptcy court's order, it need not address whether the bankruptcy court's order that "all limitations periods for any other claims under applicable law are tolled and extended until this case is closed or a final decree is entered" is binding upon this Court.[4] (Instrument No. 38, Ex. 5, at 3).

The Court is not unsympathetic to Cloud's allegations. However, the FTCA only constitutes a limited waiver of the United States' sovereign immunity. The limitations provisions are "the balance struck by Congress in the context of tort claims against the Government; and [the Court is] not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Kubrick*, 100 S.Ct. at 357.

**B.**

Cloud contends that, even if the Court determines that his FTCA claim began

---

4. The Court notes, without deciding, that there is a question whether the bankruptcy court possessed the authority to "toll[ ] and extend[ ]" the statutes of limitations for "any other claims under applicable law." (Instrument No. 38, Ex. 5, at 3). Although the bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions," 11 U.S.C.A. § 105(a) (2000), of the Bankruptcy Code, the Supreme Court has held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). Here, it is not clear that the bankruptcy court's blanket order that all statutes of limitations are tolled for "*any* other claims under applicable law," (Instrument No. 38, Ex. 5, at 3) (emphasis added), was exercised within the confines of the Bankruptcy Code.

accruing on January 12, 1996, the statute of limitations was tolled when he subsequently filed for bankruptcy on November 26, 1997. (Instrument No. 37, at 2). Cloud argues that under 11 U.S.C.A. § 108(a) (2000) his FTCA claim did not expire until November 1999. (Instrument No. 38, at 13). Section 108(a) of the Bankruptcy Code provides, in relevant part:

(a) If applicable nonbankruptcy law ... fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C.A. § 108(a) (2000) (emphasis added).

According to Cloud, section 108(a) is the appropriate Bankruptcy Code provision for tolling his FTCA claim because "commence an action," *Id.,* is not limited to filing an action in court. Indeed, Cloud maintains that "[t]he legislative history of § 108 reveals that subsection (a) encompasses tolling for acts beyond the simple filing of a lawsuit." (Instrument No. 38, at 17). Consequently, Cloud urges the Court to rule that section 108(a)'s "commence an action" language contemplates the presentment of an administrative claim.

The United States, in contrast, argues that Cloud seeks tolling protection under the wrong Bankruptcy Code provision. Rather, the United States contends that Cloud's claim was only tolled for 60 days under 11 U.S.C.A. § 108(b) (2000). In pertinent part, section 108(b) reads:

(b) [I]f applicable nonbankruptcy law...fixes a period within which the debtor or an individual ... may file *any pleading, demand, notice, or proof of claim or loss, ... or perform any other*

*similar act,* and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C.A. § 108(b) (2000) (emphasis added).

The United States maintains that section 108(b), and not section 108(a), is the applicable tolling provision because Cloud's administrative claim to the DOJ qualifies as "any pleading, demand, notice, or proof of claim or loss, ... or [ ] any other similar act." *Id.* The United States argues that Cloud's presentment of an administrative claim does not mean that he has "commence[d] an action" under section 108(a). In contrast, Cloud contends that section 108(b) is merely a residual provision generally reserved for claims "outside the context of litigation." (Instrument No. 38, at 17). He asserts that "[i]t does not make sense to give a trustee a two-year extension to file suit under the Federal Tort Claims Act [under section 108(a) ] but a sixty-day extension to file an administrative claim [under section 108(b) ]." (*Id.* at 18).

The challenge over which Bankruptcy Code tolling provision applies is crucial because it determines whether Cloud's FTCA claim is tolled for two years or merely sixty days. There is no question that one of these provisions apply because Cloud's bankruptcy petition of November 26, 1997, qualifies as an "order for relief" under the Bankruptcy Code. 11 U.S.C.A. § 301 (2000) (stating that "[t]he commencement of a voluntary case under [the Bankruptcy Code] constitutes an order for relief"). If section 108(a) applies, thus tolling the FTCA claim for two years, Cloud would have been allowed to present his administrative claim to the DOJ until November 1999. On the other hand, applying

section 108(b) would have only allowed Cloud to present his administrative claim to the DOJ until January 1998, thereby time-barring his FTCA claim.

The FTCA's intersection with the tolling provisions in sections 108(a) and (b) is an issue of first impression in the Fifth Circuit. However, the District of Columbia Circuit's reasoning in *Eagle–Picher Indus., Inc. v. United States*, 937 F.2d 625 (D.C.Cir.1991), is persuasive. In *Eagle–Picher*, an asbestos products manufacturer to shipyards sued the United States to recover substantial expenses incurred from asbestos-related litigation and settlements. Because the plaintiff presented its administrative claims to the relevant federal agencies on February 15, 1984, only claims after February 15, 1982, could be included in its FTCA suit. However, more than 90% of the plaintiff's underlying claims occurred before February 15, 1982. Consequently, the plaintiff argued that its filing of a bankruptcy petition on July 29, 1982, tolled the FTCA statute of limitations for two years. As a result of the tolling, the plaintiff maintained that its February 15, 1984, claims presentment fell within the statute of limitations. In affirming the district court's partial dismissal of the claims as time-barred, the D.C. Circuit held that "the FTCA presentment requirement should be considered a 'notice or proof of claim' under § 108(b), rather than an 'action' under § 108(a)." *Id.* at 640. The court noted that the FTCA considers the presentment of an administrative claim a "logical and a temporal antecedent to the prosecution of any tort 'action.'" *Id.* at 640.

The *Eagle–Picher* decision nearly mirrors the circumstances here. Like the *Eagle–Picher* plaintiff, Cloud filed for bankruptcy and claimed the two-year tolling protection of section 108(a). However, as the D.C. Circuit artfully explained, only an "action," as defined by section 108(a), justifies the two-year tolling because it "is a more substantial and involved undertaking than the filing of a 'claim.'" *Id.* at 640.

Cloud contends, on the other hand, that "compilation of an administrative claim for presentment under the FTCA is actually more onerous than filing suit." (Instrument No. 38, at 18). Indeed, he argues that the purpose of section 108(a) is "completely frustrated" by limiting the presentment of administrative claims to the 60–day tolling period under section 108(b). (*Id.*). Cloud's arguments, however, have no support in the law. In enacting the presentment requirement to the FTCA, the Congress sought "to avoid unnecessary litigation and to expedite fair settlement of tort claims asserted against the United States." *Eagle–Picher*, 937 F.2d at 640. Moreover, "Congress understood these claims presentation statutes as requiring only minimal notice." *Id.* Accordingly, section 108(b)'s reference to the "fil[ing of] any pleading,...or proof of claim or loss, ... or [the] perform[ance of] any other similar act" encompasses the minimal notice implicated by an administrative claim presentment. *Id.* Although Cloud asserts that "[i]t does not make sense to give a trustee a two-year extension to file suit under the Federal Torts Claims Act but a sixty-day extension to file an administrative claim," (Instrument No. 38, at 18), the law squarely indicates otherwise:

> Because presentment requires only 'minimal notice,' the initiation of a tort claim against the government is far less costly and far easier than the initiation of an action against a nongovernmental tortfeasor. Given this lesser burden on FTCA claimants it is neither unfair nor inappropriate for § 108(b)'s shorter tolling period to apply to FTCA tort claims while § 108(a)'s two-year period applies to all nongovernmental tort actions.

*Eagle–Picher*, 937 F.2d at 640.

Analogously, a decision by the Fifth Circuit in *TLI, Inc. v. United States*, 100 F.3d 424 (5th Cir.1996), reflects the reasoning of *Eagle–Picher*. In *TLI*, the taxpayer sought a refund in 1989 for incorrectly assessed and collected taxes in 1984. The taxpayer argued that section

108(a) extended the time for it make its administrative refund claim by two years. Specifically, it maintained that 108(a)'s "commence[ment of] an action" language includes the filing its administrative claim. In affirming the district court's grant of the United States' motion for summary judgment, the Fifth Circuit held that "[w]hile an administrative refund application must precede a tax action, it does not commence it." *TLI*, 100 F.3d at 427. The court explained that, taken in its ordinary context, "action" refers to a lawsuit brought in court. *Id.* (quoting Black's Law Dictionary 28 (6th ed.1990)). Similarly, within the framework of the Federal Rules of Civil Procedure, the court noted that Rule 3, aptly entitled "Commencement of Action," defines it in this way: "A civil action is commenced by filing a complaint with the court." *Id.* (quoting Fed. R.Civ.P. 3).

■ Like *TLI*, Cloud argues that his administrative claim is encompassed by section 108(a)'s "action." Just as a administrative tax refund claim does not commence litigation, *Id.*, however, Cloud's administrative claim under the FTCA does not, either. Rather, an administrative claim under the FTCA, like an administrative tax refund claim, is a jurisdictional requirement that necessarily precedes any litigation. *See GAF Corp. v. United States*, 818 F.2d 901, 918 (D.C.Cir.1987) (holding that the Congress instituted the presentment requirement "as a precondition to filing suit" in order to reduce the "filing of large numbers of suits which might be settled out of court"). Thus, although Cloud believes that the filing of an administrative claim warrants section 108(a)'s two-year tolling because "[t]he process for submitting a claim under the FTCA is far more complex than filing a lawsuit," (Instrument No. 38, at 19), the law plainly indicates that section 108(b)'s sixty-day tolling applies to the filing of administrative claims. *TLI*, 100 F.3d at 427; *Eagle–Picher*, 937 F.2d at 640.

Because Cloud's bankruptcy petition only tolled the FTCA statute of limitations for sixty days under section 108(b), Cloud was required to present his administrative claim to the DOJ by approximately January 26, 1998. Cloud's presentment of his claim in March 1999, consequently, was time-barred.

### C.

■ Although the United States has moved for a complete dismissal of Cloud's complaint, Cloud argues in a footnote that, based on 11 U.S.C.A. § 106(c) (2000), the United States is only eligible for a "partial dismissal." Cloud asserts that, even if this Court finds that the United States' sovereign immunity from suit has not been abrogated under the FTCA, there is an independent basis for the immunity's waiver. Under section 106(c), "[n]otwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate."

According to Cloud, the United States has "made a claim in Cloud's bankruptcy ... [in the amount of] $1,574,029.00." (Instrument No. 38, n. 1, at 1). Under his reasoning, the FTCA lawsuit constitutes "any claim against such governmental unit that is property of the estate" as defined in section 106(c). Because the United States' alleged claim in Cloud's bankruptcy must be "offset," 11 U.S.C.A. § 106(c), against his FTCA claim, Cloud urges the Court to find that the United States' sovereign immunity is abrogated.

■ The Court finds Cloud's reasoning unpersuasive. Section 106(c)'s abrogation of sovereign immunity was designed to prevent a party from losing its opportunity to file a compulsory, as opposed to a merely permissive, counterclaim against the "governmental unit." *See In re Rebel Coal Co., Inc.*, 944 F.2d 320, 321 (6th Cir.1991). According to Federal Rule of Civil Procedure 13(a), a compulsory counterclaim exists "if it arises out of the transaction or

occurrence that is the subject matter of the opposing party's claim." Here, there is no allegation that Cloud's malicious prosecution lawsuit "arises out of the transaction or occurrence that is the subject matter" of the United States' alleged claim in Cloud's bankruptcy. Furthermore, even assuming Cloud's FTCA action against the DOJ qualifies as a compulsory counterclaim, there is no evidence that the DOJ is the "governmental unit" asserting a stake in Cloud's bankruptcy. The text of section 106(c) specifically provides that a party's compulsory counterclaim must be directed against the same "governmental unit" responsible for filing a claim against the party. 11 U.S.C.A. § 106(c) ("there shall be offset against a claim or interest of *a governmental unit* any claim against *such governmental unit* that is property of the estate" (emphasis added)). Finally, assuming *arguendo* that section 106(c) appropriately abrogates sovereign immunity in the circumstances here, Cloud is not somehow immune from the FTCA's statute of limitations. To the extent that Cloud's FTCA suit constitutes the compulsory counterclaim that will "offset" the United States' claim in his bankruptcy, he was still required to abide by the time period strictures set forth in the FTCA.

### IV.

Based on the foregoing, the Court finds that the United States' motion to dismiss should be **GRANTED.**

The Clerk shall enter this Order and provide a copy to all parties.